The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

James W. GORDON, Defendant–
Appellant.

No. 05CA0879.

Colorado Court of Appeals,
Div. I.

Feb. 8, 2007.

John W. Suthers, Attorney General, Jonathan Patrick Fero, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Kenneth H. Gray, Colorado Springs, Colorado, for Defendant–Appellant.

Opinion by Judge MÁRQUEZ.

Defendant, James W. Gordon, appeals the judgment of conviction entered upon jury verdicts finding him guilty of willful destruction of wildlife (count I), waste of edible game wildlife (count II), illegal possession of wildlife (count III), and failure to tag (count IV). We affirm.

In September 2003, defendant, a licensed hunter, shot and killed a mountain goat. Defendant asserts he left the goat on the mountain until the next morning because he was fatigued and it was getting late in the evening, and the next day he recovered the goat's hide, head, and hooves, but left the meat because it was spoiled. In accordance

with Department of Wildlife (DOW) regulations, he reported his hunt to DOW.

DOW officers located the goat carcass and discovered the head, hide, and hooves were missing. According to DOW officers, there was edible meat remaining on the carcass and no indication defendant had attempted to remove any edible meat.

Defendant was charged with violations of the statutes pertaining to wildlife, § 33–1–101, et seq., C.R.S.2006, and a jury found him guilty as charged. He was later sentenced to pay fines for each count plus a mandatory penalty of $10,000 for counts I and III. The court denied defendant's Crim. P. 29(c) motion to dismiss counts I and III.

## I. Double Jeopardy

Defendant first contends that count I (willful destruction of wildlife) and count III (illegal possession of wildlife) violated the prohibition against multiplicity amounting to double jeopardy and that the court's failure to grant his motion to dismiss was reversible error. He contends that the predicate to support counts I and III was based solely on alleged waste of game meat (count II) and alleged failure to tag (count IV), and without either of these allegations, there would have been no willful destruction or illegal possession. We perceive no reversible error.

### A. Issue Preserved

■ As an initial matter, we reject the People's contention that we may not consider this issue because it was not raised in the trial court. After trial, defendant moved to dismiss these counts. Although defendant did not use the terms "multiplicity" or "double jeopardy," the record reflects the trial court considered double jeopardy by its use of that term. Therefore, the double jeopardy issue was preserved. *Cf. People v. DiazGarcia,* 159 P.3d 679, 2006 WL 2435058 (Colo. App. No. 04CA2658, Aug. 24, 2006) (arguments never presented to, considered by, or ruled upon by the district court may not be raised for the first time on appeal).

### B. Defendant's Arguments

■ Under the Double Jeopardy Clauses of both the United States and Colorado Constitutions, the state may not punish a person twice for the same offense. U.S. Const. amend. V; Colo. Const. art. II, § 18. This protection specifically includes guarantees that the accused will not be subject to multiple punishments imposed in the same criminal prosecution for statutory offenses proscribing the same conduct. *Patton v. People,* 35 P.3d 124 (Colo.2001).

Defendant relies chiefly on *Woellhaf v. People,* 105 P.3d 209 (Colo.2005), and *People v. Abiodun,* 111 P.3d 462 (Colo.2005), in his articulation of multiplicity and double jeopardy principles applicable to his case. We conclude defendant's reliance is misplaced because his case is distinguishable from *Woellhaf* and *Abiodun.*

Defendant observes that in *Woellhaf,* the supreme court concluded:

> [B]ecause neither the unit of prosecution of sexual assault on a child, nor the unit of prosecution of sexual assault on a child by one in a position of trust, defines separate offenses for each type of sexual contact within one act or incident of sexual assault on a child, we hold that the multiple punishments at issue here violate state and federal double jeopardy protections and cannot be sustained.

*Woellhaf, supra,* 105 P.3d at 213–14. The court also held, "Double jeopardy is commonly implicated in multiplicity issues. Multiplicity is the charging of multiple counts and the imposition of multiple punishments for the same criminal conduct." *Woellhaf, supra,* 105 P.3d at 214. Because the record was devoid of any evidence from which the supreme court could discern factually distinct offenses, it concluded that there was a single factual offense and that the multiple punishments were barred by principles of double jeopardy.

In *Abiodun,* the defendant was charged with separate counts of possession and distribution of a controlled substance on each of two dates. In holding that the separate convictions for possession must be vacated, the supreme court noted (1) an accused may not

be convicted of two offenses if one is included in the other, § 18–1–408(1)(a), C.R.S.2006; (2) a logical preliminary to this question is whether the legislature intended to create two separate offenses at all; and (3) ambiguity concerning the creation of multiple offenses in a single statute must be ultimately resolved in favor of lenity.

In our view, several factors distinguish defendant's case from *Woellhaf* and *Abiodun:* (1) both of those cases addressed statutory schemes, not applicable here, essentially defining as a single crime a range of activities described in one statute; (2) the offenses here are based on separate statutes; (3) counts I and III are not lesser included offenses of each other; and (4) the offenses are based on different, distinct acts of defendant.

■ Where the General Assembly proscribes conduct in different provisions of the penal code and identifies each provision with a different title, its intent to establish more than one offense is generally clear. *People v. Abiodun, supra.*

■ A defendant may be convicted of more than one offense arising out of a single incident if he or she violated more than one statute. *People v. Moore,* 877 P.2d 840 (Colo.1994).

Here, the offenses of which defendant was convicted are based on separate statutes. Count I alleged a violation of § 33–6–117(1), C.R.S.2006, which states:

> Except as is otherwise provided in articles 1 to 6 of this title or by rule of the commission, it is unlawful for a person to hunt or take, or to solicit another person to hunt or take, wildlife and detach or remove, with the intent to abandon the carcass or body, only the head, hide, claws, teeth, antlers, horns, internal organs, or feathers or any or all of such parts; to abandon the carcass or body of such wildlife; or to take and abandon wildlife.

Count II alleged a violation of § 33–6–119(2), C.R.S.2006, waste of edible game wildlife, which states, "Except as otherwise provided in articles 1 to 6 of this title or by rule of the commission, it is unlawful for a person to fail to reasonably attempt to dress or care for and provide for human consumption the edible portions of game wildlife."

Count III alleged a violation of § 33–6–109(1), (3)(b), and (3.4)(a)(VI), C.R.S.2006. Section 33–6–109(1) states: "It is unlawful for any person to hunt, take, or have in such person's possession any wildlife that is the property of this state as provided in section 33–1–101, except as permitted by articles 1 to 6 of this title or by rule or regulation of the commission." Section 33–6–109(3)(b) and (3.4)(a)(VI) describe the applicable penalties.

Count IV alleged a violation of § 33–6–111(3), C.R.S.2006, failure to tag, which states, "Any person who fails to void his license or carcass tag as required by commission rule or regulation is guilty of a misdemeanor."

The subsections also describe the applicable penalties, and defendant has not identified any exceptions that would absolve him from liability under these statutes.

We conclude the General Assembly enacted different penal provisions for each offense, identified each with a different title, and thus intended to establish more than one offense.

■ We also conclude that a comparison of the statutory elements reveals that the violation of each of these statutes would constitute a separate offense. To determine whether there are two offenses or only one, the elements of the offenses must be compared to ascertain whether each provision requires proof of a fact that the other does not. If each offense necessarily requires proof of at least one additional fact that the other does not, the strict elements test is not satisfied, and a presumption arises that conviction for both offenses is consistent with legislative intent. *Patton v. People, supra; People v. Leske,* 957 P.2d 1030 (Colo.1998) (citing *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). Under this strict elements test, if proof of the facts establishing the statutory elements of the greater offense necessarily establishes all the elements of the lesser offense, the lesser offense is included. *Meads v. People,* 78 P.3d 290 (Colo.2003); *Patton v. People, supra; People v. Leske, supra.*

Willful destruction of wildlife (count I) requires proof that a person removed the trophy portions of any wild animal and abandoned the carcass. Illegal possession of wildlife (count III) requires a showing that the person illegally had wildlife in his or her possession.

Because each of these statutes requires proof of a fact or facts not required by the other, we conclude that defendant's convictions of the two offenses do not violate double jeopardy principles.

■ Defendant nonetheless argues that he came within the exceptions in the phrases, "except as permitted by articles 1 to 6" in § 33–6–109(1) and "[e]xcept as is otherwise provided in articles 1 to 6" in § 33–6–117(1), by having a valid hunting license, hunting in the right district in the right season, hunting the correct species, and timely checking in with the DOW. However, neither these statutes nor any other statute in articles 1 to 6 states that persons hunting with a valid license are exempt from their provisions.

In addition, defendant's acts of hunting and abandoning the carcass are distinct from his act of illegally possessing wildlife. Although, defendant was authorized to hunt, he was not authorized to take and abandon or unlawfully possess wildlife. It is undisputed that defendant took with him only the head, hide, and hooves of the animal and left the remainder of the animal in the field. He also did not sign, date, and attach the carcass tag to the parts of the animal he removed or those he left in the field. Although defendant presented a different version of the events, in finding him guilty of all counts, the jury rejected his version.

## II. Jury Instructions

Defendant next contends that the trial court erred by not instructing the jury correctly as to the elements of willful destruction of wildlife and illegal possession of wildlife. We disagree.

■ It is the trial court's duty to instruct the jury on all matters of law. When, as here, the defendant objects to a jury instruction, we review for harmless error. Under a harmless error standard, reversal is required if the error affected the substantial rights of the defendant. When the error is not of constitutional dimension, the error will be disregarded if there is not a reasonable probability that it contributed to the defendant's conviction. *People v. Garcia*, 28 P.3d 340 (Colo.2001). We conduct our inquiry in light of the entire record to determine whether we can say with fair assurance that the error did not substantially influence the jury verdict or impair the fairness of the trial. *Cordova v. People*, 817 P.2d 66 (Colo. 1991).

■ The trial court has substantial discretion in formulating the jury instructions so long as they are correct statements of the law and fairly and adequately cover the issues presented. *People v. Williams*, 23 P.3d 1229 (Colo.App.2000).

■ We review the construction of a statute de novo. Our task in construing a statute is to give effect to the intent of the General Assembly and its chosen legislative scheme, looking first to the plain language. If the statute is clear and unambiguous on its face, then we will apply the statute as written because it may be presumed that the General Assembly meant what it clearly said. *In re Marriage of Chalat*, 112 P.3d 47 (Colo.2005).

### A. Willful Destruction of Wildlife

■ Defendant contends that the mental state for willful destruction of wildlife should be "with intent" and not "knowingly." He reasons that § 33–6–117(1) was amended to include "to abandon the carcass or body of such wildlife; or to take and abandon wildlife" after a division of this court held that "knowingly" was the applicable mental state. We are not persuaded.

In *People v. Lawrence*, 55 P.3d 155 (Colo. App.2001), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the division considered a former version of § 33–6–117(1), which read:

[I]t is unlawful for any person to hunt or take, or to solicit another person to hunt or take, any wildlife and detach or remove, with the intent to abandon the carcass or

body, only the head, hide, claws, teeth, antlers, horns, internal organs, or feathers or any or all of such parts *or to kill and abandon any wildlife.*

Colo. Sess. Laws 1994, ch. 269 at 1586 (emphasis added). The *Lawrence* division held that the mental state "knowingly" was implied by the second offense set forth under § 33–6–117(1), namely "to kill and abandon any wildlife."

In 2003, the statute was amended to its current form by deleting "or to kill and abandon any wildlife" and adding a semicolon and "to abandon the carcass or body of such wildlife; or to take and abandon wildlife."

In the present case, the trial court gave the following instruction, to which defendant objected:

The elements of the crime of Willful Destruction of Wildlife are that defendant ...

3.  hunted or took wildlife, and

4.  knowingly

5.  abandoned the carcass or body of such wildlife.

As the division in *Lawrence* similarly concluded, we conclude here that the General Assembly intended that the phrase "to abandon the carcass or body of such wildlife; or to take and abandon wildlife" in the present version of § 33–6–117(1) is to be read to stand on its own. Giving proper effect to all the words in § 33–6–117(1) requires recognition that the General Assembly has established separate offenses. With the words, "to hunt or take ... wildlife and detach or remove, with the intent to abandon the carcass or body, only the head, hide, claws, teeth, antlers, horns, internal organs, or feathers or any or all of such parts," the General Assembly has made it an offense to hunt or kill an animal with the intent to keep only certain parts and to abandon the rest of the carcass.

The offense applicable here, however, is found in the words, "to abandon the carcass or body of such wildlife; or to take and abandon wildlife." This offense involves only the taking and abandoning of an animal, without regard for the actor's purpose or intention.

Although the General Assembly did not explicitly prescribe a particular mens rea for the abandonment offense, its silence as to this element is not necessarily to be construed as an indication that no culpable mental state is required. Rather, the mental state is to be inferred from the statute. *People v. Hart*, 658 P.2d 857 (Colo.1983); *People v. Lawrence, supra; see People v. Moore*, 674 P.2d 354 (Colo.1984) (concluding that "knowingly" was implied by counterfeit controlled substances statute).

Here, we conclude that the mental state "knowingly" is implied by the "to take and abandon wildlife" offense set forth in § 33–6–117(1). The "knowingly" mental state is implied because the first crime set forth in the statute is expressly assigned as a specific intent crime. Had the General Assembly intended to make the abandonment offense a specific intent crime as well, it would have done so. Moreover, the language of the abandonment offense in § 33–6–117(1) logically requires knowing that one abandoned wildlife. Nothing in that language is tied to specific intent, recklessness, or neglect.

In this case, defendant was charged with abandoning wildlife, and the jury instruction was based on the "take and abandon" provision. He was not charged with the first offense of hunting or taking of wildlife and detaching or removing parts from the carcass with the intent to abandon the carcass or body thereafter. Thus, the trial court did not err in instructing the jury that the culpable mental state for defendant's willful destruction of wildlife offense was knowingly.

## B.   Illegal Possession of Wildlife

■   Defendant also contends that the trial court erred by including the charges of waste of game meat and failure to tag in the illegal possession jury instruction. Specifically, defendant contends that there are no reported decisions where the phrase "except as permitted by articles 1 to 6 of this title or by rule or regulation of the commission" has resulted in an elemental jury instruction which contained references to other offenses. We reject this contention.

The illegal possession of wildlife statute, § 33–6–109(1), includes the words "except as

permitted by articles 1 to 6 of this title or by rule or regulation of the commission," and the waste of edible game wildlife statute, § 33–6–119(2), similarly includes "[e]xcept as otherwise provided in articles 1 to 6 of this title or by rule of the commission."

Here, over defendant's objection, the trial court gave the following instruction for the § 33–6–109(1) charge:

The elements of the crime Illegal Possession of Wildlife are that the defendant . . .

3. Wasted Edible Game Wildlife as found in Instruction No. 16, or Failed to Tag Wildlife as found in Instruction No. 18, and

4. the jury must unanimously agree that all of the elements of at least one of the violations of Colorado statute, described in paragraph 3 above, have been proven by the prosecution.

5. knowingly,

6. hunted, took or had possession

7. any wildlife that is property of this state. [sic]

The trial court determined that because offenses, such as waste of edible game wildlife or failure to tag, can occur even with the possession of a license, defendant's hunting license did not fit under the "except as permitted by articles 1 to 6 of this title or by rule or regulation of the commission" exception. We agree that defendant could be convicted under this section even though he had a hunting license.

The exception clause does not give a blanket exception to all valid license holders. Defendant's only ground for an exception was that he had a valid license to hunt, and nothing in the record supports another exception. Therefore, reversal is not required.

The judgment is affirmed.

Judge ROTHENBERG and Judge BERNARD concur.