The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Christine Anita GALLEGOS, Defendant–Appellant.

No. 07CA1299.

Colorado Court of Appeals.

Feb. 19, 2009.

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Office of Samuel Santistevan, LLC, Samuel Santistevan, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Christine Anita Gallegos, appeals the judgment of conviction and sentences entered on jury verdicts finding her guilty of criminal impersonation, theft, and false reporting, and on findings by the court that she is a habitual criminal. We affirm.

## I. Background

Defendant stole merchandise valued at $9.94 from a convenience store. A police officer witnessed the theft and, with another officer's assistance, immediately apprehended defendant. One of the officers placed defendant under arrest and asked her what her name was. She told him that her name was "Ramona Gallegos" and that she

was born on June 17, 1961. Ramona Gallegos is defendant's sister's name.

While arresting defendant, one of the officers noticed a teenage girl looking at defendant "as if she knew her." The officer approached the girl, who told the officer that defendant was her aunt, Christine Gallegos. However, when the officer confronted defendant with the girl's statement, she persisted in maintaining that her name was Ramona Gallegos.

At the police station, while filling out a custody report, defendant again indicated that her name was "Ramona Gallegos." After taking defendant's fingerprints, an officer submitted them to the Colorado Bureau of Investigation (CBI). CBI advised the police that the fingerprints belonged to a "Christine Gallegos," whose date of birth was August 19, 1965.

The People initially charged defendant with forgery, criminal impersonation, and theft, and later added five habitual criminal charges. A jury convicted defendant of criminal impersonation (a class 6 felony), theft (a class 3 misdemeanor), and the lesser nonincluded offense of false reporting (a class 3 misdemeanor). The court adjudicated defendant a habitual criminal after the prosecution proved that defendant had four prior felony convictions, two for theft and two for attempted escape. Pursuant to the habitual criminal statute, section 18–1.3–801(2), C.R.S. 2008, the court sentenced defendant to six years in the custody of the Department of Corrections, four times the eighteen-month maximum presumptive range sentence for the felony criminal impersonation conviction. *See* § 18–1.3–401(1)(a)(V)(A), C.R.S.2008.

## II.  Lesser Nonincluded Offense

Defendant contends that her convictions for criminal impersonation and false reporting must be reversed because the district court failed to instruct the jury explicitly that it could convict her of the lesser nonincluded offense of false reporting and acquit her of the criminal impersonation charge. We disagree.

During a jury instruction conference, defendant's counsel asked the district court to instruct the jury on false reporting, a lesser nonincluded offense of the charged offense of criminal impersonation, and to "modify a lesser included bridge instruction and have that added to the main packet." The bridge instruction would have instructed the jury of its option to convict defendant of the lesser nonincluded offense and acquit her of the charged offense. The court agreed to include such an instruction, but only if it later decided to instruct the jury on the lesser nonincluded offense. The court later included the lesser nonincluded instruction in the jury instructions, but failed to include a bridge instruction. The court gave the parties an opportunity to object to the instructions, but defendant did not object to them before they were submitted to the jury.

■ It is far from clear that defendant preserved the objection she now raises on appeal. Nonetheless, we will assume that she did so. Accordingly, we review for harmless error. *People v. Miller*, 113 P.3d 743, 749 (Colo.2005); *People v. Gordon*, 160 P.3d 284, 288 (Colo.App.2007). Under the harmless error standard, reversal is required only if the error affected the substantial rights of the defendant. *People v. Garcia*, 28 P.3d 340, 344 (Colo.2001); *Gordon*, 160 P.3d at 288.

■ It is the district court's duty to instruct the jury on all matters of law. *Garcia*, 28 P.3d at 343; *Gordon*, 160 P.3d at 288. The district court has substantial discretion in formulating the jury instructions, so long as they are correct statements of the law and fairly and adequately cover the issues presented. *People v. Romero*, 197 P.3d 302, 309 (Colo.App.2008); *Gordon*, 160 P.3d at 288. A conviction will not be reversed if the instructions, read as a whole, adequately inform the jury of the law. *People v. Gonyea*, 195 P.3d 1171, 1174 (Colo.App.2008).

■ An offense is a lesser included offense of a charged offense where "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense  charged...." § 18–1–408(5)(a), C.R.S.2008; *see Meads v. People*, 78 P.3d 290, 293–94 (Colo.2003). "[A] lesser nonincluded offense may be any offense lesser in

severity than the original charged offense, provided that such lesser offense arises from the same facts leading to the original charge, and that such lesser offense also contains at least one element not contained in the charged offense." *People v. Skinner*, 825 P.2d 1045, 1047 (Colo.App.1991).

■ The distinction between lesser included offenses and lesser nonincluded offenses is important. A jury may not convict a defendant on the original charged offense and also on the lesser included offense. § 18–1–408(1)(a), C.R.S.2008; *Skinner*, 825 P.2d at 1047. However, because a charged offense and a lesser nonincluded offense are independent offenses, they do not merge—that is, a defendant may be convicted of both. *See People v. Whittiker*, 181 P.3d 264, 278 (Colo. App.2006); *People v. Ramirez*, 18 P.3d 822, 830 (Colo.App.2000); *Skinner*, 825 P.2d at 1047.

■ The court instructed the jury that it was to consider each charge independently. Defendant's counsel explained to the jury in closing argument that defendant was seeking a "not guilty" verdict on the criminal impersonation charge, but conceded that defendant was guilty of false reporting. *See Whittiker*, 181 P.3d at 276 (in determining whether jury was adequately instructed, appellate court considers whether defense counsel's closing argument fairly communicated the defendant's theory of the case). Thus, the jury was aware of both its option to acquit defendant of one charge notwithstanding a guilty verdict on another and defendant's position. An additional instruction was not required. *See People v. Gallegos*, 950 P.2d 629, 633–34 (Colo.App.1997).

III. Admissibility of CRE 404(b) Evidence

Defendant contends that the district court abused its discretion by admitting evidence that she had used her sister's name in connection with a past arrest, which had led to the sister's arrest when defendant failed to appear in court. We disagree.

The court admitted testimony by defendant's sister, Ramona Gallegos, that when defendant was previously arrested for shoplifting, defendant told police that her name was Ramona Gallegos. Ramona Gallegos was named on the court summons and was arrested after defendant failed to appear on that summons. Officers eventually released Ramona Gallegos after determining that her fingerprints did not match those of the person booked on the summons.

■ We review a district court's admission of other act evidence for an abuse of discretion. *People v. Cousins*, 181 P.3d 365, 370 (Colo.App.2007); *People v. Boykins*, 140 P.3d 87, 96 (Colo.App.2005). A district court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *Cousins*, 181 P.3d at 370.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that she acted in conformity therewith. CRE 404(b); *Boykins*, 140 P.3d at 96. Such evidence, however, is admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. CRE 404(b); *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990).

■■ To introduce Rule 404(b) evidence, the prosecution must establish by a preponderance of the evidence that the other crime or act occurred and that the defendant committed it. *Kinney v. People*, 187 P.3d 548, 554 (Colo.2008); *People v. Garner*, 806 P.2d 366, 370 (Colo.1991); *People v. Novitskiy*, 81 P.3d 1070, 1072 (Colo.App.2003). Further, such evidence is admissible only if (1) the evidence relates to a material fact in the case; (2) the evidence is logically relevant; (3) the logical relevance of the evidence is independent of the intermediate inference prohibited by the rule; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Kinney*, 187 P.3d at 554 & n. 2; *Spoto*, 795 P.2d at 1318.

Defendant did not contest that she committed the prior act. The district court concluded that the evidence was admissible to prove knowledge, intent, and lack of mistake. We perceive no abuse of discretion in its ruling.

■ Evidence that defendant previously had used her sister's name in connection with an arrest was logically relevant to a material issue in the case. An element of the offense of criminal impersonation is that the defendant knowingly assumed a false identity to gain a benefit for herself or to injure or defraud another, § 18–5–113(1)(e), C.R.S. 2008, and defendant's theory was that she did not have the requisite intent. The evidence bore on defendant's intent, plan, knowledge, and absence of mistake—that is, on the scienter requirement of the offense. Because defendant previously used her sister's name during a theft arrest and knew the consequences of doing so, her repeat conduct in this instance showed both her intent to, at least, buy time before her actual identity could be determined and her intent that her sister bear the responsibility for what defendant had done. The logical relevance of the evidence was independent of the intermediate inference that defendant has a bad character.

Defendant argues that the prejudice of the other act evidence outweighed its probative value because the court allowed Ramona Gallegos to testify about the details of her arrest after defendant failed to appear in court. We disagree.

■ Because we must assume the maximum probative value and the minimum prejudicial impact of this evidence, defendant must show that the need for exclusion of the evidence was great. *Masters v. People*, 58 P.3d 979, 1001 (Colo.2002). She has not done so. Indeed, the detail testified to by Ramona Gallegos demonstrated the similarity of the incidents, thereby making the probative value of the prior incident more apparent. *Cf. People v. Baker*, 178 P.3d 1225, 1230–31 (Colo.App.2007) (witness was allowed to testify to details of sexual assault to show that the act had occurred and that the defendant had committed the act); *People v. Quintana*, 682 P.2d 1226, 1230–31 (Colo.App.1984) (codefendant's lengthy and detailed testimony about her drug dealings with the defendant was admissible since it tended to establish the defendant's continuing plan to sell heroin).

## IV. Selective Prosecution

Defendant also contends, for the first time on appeal, that the prosecutor engaged in selective prosecution with respect to the habitual criminal charges. The People assert that defendant waived her right to raise this issue because she failed to raise an objection before trial. We agree with the People. In so doing, we necessarily reject defendant's assertion that she preserved this issue by objecting generally to the habitual criminal charges and requesting a proportionality review after the court sentenced her.

■ Several months after the commencement of the action, the People filed a motion for permission to add five habitual criminal counts. At a hearing on the motion, defendant's counsel argued that defendant should be permitted to withdraw her not guilty plea to the original charges and then plead guilty to those charges, which would preclude the addition of habitual criminal charges because no such charges may be added after a defendant enters a guilty plea. *See People v. Rieger*, 128 P.3d 295, 296 (Colo.App.2005). The court rejected that argument, granted the motion, and advised defendant of the new charges. Defendant entered not guilty pleas.

Following the jury's verdicts, the court held a hearing to adjudicate the habitual criminal counts. Defendant's counsel requested a jury trial. The court denied that request and subsequently adjudicated defendant a habitual criminal on four counts. Defendant's counsel then moved for an abbreviated proportionality review, but did not otherwise object to the habitual criminal convictions.

Crim. P. 12(b)(2) and (3) provide that "objections based on defects in the institution of the prosecution ... may be raised only by motion," which "shall be made within twenty days following arraignment." "Failure to present any such defense or objection constitutes a waiver of it...." Crim. P. 12(b)(2). No Colorado appellate decision has addressed directly whether a claim of selective prosecution falls within this rule.

■ When a Colorado rule is similar to its federal counterpart, federal court decisions interpreting the federal rule may pro-

vide persuasive guidance in interpreting the Colorado rule. *State v. Buckley Powder Co.,* 945 P.2d 841, 844 (Colo.1997); *People v. Rollins,* 759 P.2d 816, 818 (Colo.App.1988). Fed. R.Crim.P. 12(b)(3)(A) is similar to Crim. P. 12(b)(2) and (3) in that it also requires a defendant to make "a motion alleging a defect in instituting the prosecution" prior to trial.

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong,* 517 U.S. 456, 463, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). For this reason, federal courts have held that a selective prosecution claim clearly pertains to the institution of a prosecution, and therefore a defendant must raise any such claim prior to trial or it is waived. *E.g., United States v. Huber,* 404 F.3d 1047, 1054 (8th Cir.2005); *United States v. Bryant,* 5 F.3d 474, 476 (10th Cir.1993); *United States v. Oaks,* 508 F.2d 1403, 1404–05 (9th Cir.1974).

We agree with the federal courts. We hold that a selective prosecution claim is an objection based on a defect in the institution of the prosecution, and therefore a defendant's failure to raise the objection by timely motion constitutes a waiver of the objection. Crim. P. 12(b)(2); *cf. Mora v. People,* 172 Colo. 261, 263–64, 472 P.2d 142, 143–44 (1970) (claim that charging information was not sufficiently specific was waived because the defendant did not raise it prior to trial).

This result is consistent with the purpose of the rule. The reason for imposing time limits on raising defenses based on defects in the institution of the prosecution is that an "inquiry into an alleged defect may be concluded and, if necessary, cured before the court, the witnesses, and the parties have gone to the burden and expense of a trial." *Davis v. United States,* 411 U.S. 233, 241, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973).

A selective prosecution claim implicates prosecutorial conduct beyond that at issue in a particular defendant's case. It necessarily requires the presentation of evidence, as to which the court must make factual findings, often depending on the court's assessments of witnesses' credibility. This searching inquiry should take place before, not after, the trial on the merits.

Here, defendant did not raise a selective prosecution claim prior to the district court's adjudication of the habitual criminal charges. Indeed, she raises that claim for the first time on appeal. Therefore, defendant waived her selective prosecution claim by failing to timely raise it pursuant to Rule 12(b)(3).

Because of our resolution of this issue, we do not reach the merits of defendant's claim.

## V. Proportionality Review

Defendant next contends that, after conducting an abbreviated proportionality review, the district court erred in concluding that there was no inference of gross disproportionality between her offense and the penalty, and therefore erred in failing to conduct an extended proportionality review. We are not persuaded.

Upon a timely request, a defendant is entitled to an abbreviated proportionality review. *People v. Deroulet,* 48 P.3d 520, 521 (Colo.2002). This review requires the court to compare the gravity of the offense to the severity of the punishment to determine whether the defendant has raised an inference of gross disproportionality. *People v. McNally,* 143 P.3d 1062, 1063 (Colo.App. 2005); *see People v. Gaskins,* 825 P.2d 30, 36 (Colo.1992). Only when the abbreviated proportionality review gives rise to an inference of gross disproportionality must a court conduct an extended proportionality review. *Close v. People,* 48 P.3d 528, 536 (Colo.2002). "[I]n almost every case, the abbreviated proportionality review will result in a finding that the sentence is constitutionally proportionate, thereby preserving the primacy of the General Assembly in crafting sentencing schemes." *Deroulet,* 48 P.3d at 526.

"When conducting an abbreviated proportionality review under the habitual criminal statute, a reviewing court must scrutinize the offenses in question to determine

'whether in combination they are so lacking in gravity or seriousness' so as to suggest that the sentence is grossly disproportionate." *Deroulet,* 48 P.3d at 524–25 (quoting in part *Gaskins,* 825 P.2d at 36); *People v. Mershon,* 874 P.2d 1025, 1031 (Colo.1994); *People v. Patnode,* 126 P.3d 249, 260 (Colo. App.2005). A court determines the gravity or seriousness of a crime "by considering the harm caused or threatened to the victim or to society and the culpability of the offender." *Deroulet,* 48 P.3d at 524; *accord Patnode,* 126 P.3d at 260.

The maximum presumptive range sentence for class 6 felony criminal impersonation is eighteen months. § 18–1.3–401(1)(a)(V)(A). Because of the habitual criminal adjudications, the district court was required to impose a sentence of four times the maximum in the presumptive range. § 18–1.3–801(2). The court thus increased defendant's sentence from eighteen months to six years.

At defendant's request, the district court conducted an abbreviated proportionality review. The court found that the sentence was not grossly disproportionate to defendant's offenses, reasoning that criminal impersonation is a "very serious" offense that causes "great harm to people's credit ratings, to their ability to get a weapons permit[,] to their ability to get jobs, [and] if their name is used in a criminal setting." The court also considered defendant's prior felony convictions as evidence of her "ongoing disregard for social norms." These convictions included two convictions for theft, one conviction for attempted escape, and one conviction for criminal impersonation.

■■■ We review de novo a district court's ruling on whether a sentence is constitutionally proportionate. *People v. Cooper,* 205 P.3d 475, 479 (Colo.App. 2008); *People v. Reese,* 155 P.3d 477, 479 (Colo.App.2006).

■■■ We conclude that defendant's six-year sentence does not give rise to an inference of gross disproportionality, and therefore she was not entitled to an extended proportionality review. Looking at her offenses in combination, as we must, we believe they were not lacking gravity or seriousness. Although no one was seriously harmed in this instance, we agree with the district court's analysis of the harm criminal impersonation may cause its victims. Defendant's convictions, in combination, also indicate, as the district court stated, a persistent disrespect and disregard for the rule of law and social norms. *Cf. Lockyer v. Andrade,* 538 U.S. 63, 66–67, 73–77, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (holding that it was not an unreasonable application of clearly established law to sentence the defendant to two consecutive terms of twenty-five years to life in prison for stealing videotapes worth approximately $150; the defendant had numerous prior convictions for theft, burglary, and "transportation of marijuana"); *Ewing v. California,* 538 U.S. 11, 17–20, 28–31, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (plurality op.) (affirming twenty-five years to life sentence imposed under a recidivism statute for stealing three golf clubs worth approximately $1,200); *Rummel v. Estelle,* 445 U.S. 263, 265–66, 284–85, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (holding that a life sentence with the possibility of parole was not disproportionate for a three-time nonviolent recidivist who had successive convictions for fraudulent use of a credit card to obtain $80 worth of goods or services, passing a forged check in the amount of $28.36, and obtaining $120.75 by false pretenses); *see generally Mershon,* 874 P.2d at 1032 ("[T]heft [is] a serious felony for proportionality purposes when it is one of a variety of prior offenses.").

## VI. Right to be Present

Defendant also contends that the district court violated her constitutional right to due process when it conducted part of a suppression hearing in her absence. We are not persuaded.

At a hearing on March 14, 2007, which defendant attended, the court set a hearing on defendant's motion to suppress for May 24, 2007. When defendant did not appear at the scheduled time, the court delayed commencing the hearing for more than one and one-half hours. Defendant's counsel told the court that she had left a message on defendant's telephone and had also sent a letter to defendant notifying her of the hearing, though she did not believe defendant re-

ceived the letter. The court proceeded with the hearing. The attorneys made their arguments, and defendant arrived shortly before the prosecutor completed his argument. Defendant's counsel did not ask for a recess to confer with her client, and told the court she did not wish to call defendant or any other witnesses. The court then denied the motion to suppress.

A defendant has a right to be present at every critical stage of a criminal trial, including a suppression hearing. *People v. Harris,* 914 P.2d 434, 437 (Colo.App. 1995); *see* Crim. P. 43(a). Due process requires that a defendant be present to the extent that a fair and just hearing would be thwarted by her absence. *Luu v. People,* 841 P.2d 271, 275 (Colo.1992). A defendant need not be present, however, if her presence would be useless or only slightly beneficial. *People v. Isom,* 140 P.3d 100, 104 (Colo.App. 2005). For instance, a defendant need not be present at a conference or argument on a question of law. Crim. P. 43(c)(2).

The defendant must be able to show how her absence from the proceedings affected her ability to defend against the charges. *Harris,* 914 P.2d at 437. Where a defendant was deprived of her right to be present, reversal is required unless the error is harmless. *Luu,* 841 P.2d at 274; *People v. Richardson,* 181 P.3d 340, 346–47 (Colo.App. 2007).

The district court did not deprive defendant of her right to be present by conducting part of the suppression hearing in her absence. Defendant has not shown how her absence during the argument phase of the hearing affected her ability to defend against the charges. We reject defendant's assertion that her absence precluded her from giving her counsel input on the issues. When defendant arrived in court, the court gave defendant's counsel the opportunity to confer with defendant and to introduce additional evidence, if necessary. Defendant's counsel's failure to request a recess discredits any claim of prejudice. *See People v. Lemons,* 824 P.2d 56, 57 (Colo.App.1991); *People v. Wieghard,* 727 P.2d 383, 386 (Colo. App.1986).

## VII. Right to Trial by Jury

Last, defendant contends that the district court violated her constitutional rights to a jury trial and due process when it, rather than a jury, determined that she was a habitual criminal. We disagree.

In *Lopez v. People,* 113 P.3d 713, 723 (Colo.2005), the Colorado Supreme Court rejected the same argument defendant now raises. *See also People v. Nunn,* 148 P.3d 222, 224–25 (Colo.App.2006). Its holding is therefore dispositive of defendant's contention in this appeal.

The judgment and sentences are affirmed.

Judge RUSSEL and Judge GABRIEL concur.