1
 2025 CO 44 Deshawn Lynn Randolph, Petitioner: v. The People of the State of Colorado, Respondent: No. 23SC167
Supreme Court of Colorado, En Banc
June 23, 2025

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 20CA174

 Attorneys for Petitioner:

 Megan
 A. Ring, Public Defender Andrea R. Gammell, Deputy Public
 Defender Denver, Colorado

 Attorneys for Respondent:

 Philip
 J. Weiser, Attorney General Katharine Gillespie, Senior
 Assistant Attorney General Denver, Colorado

 JUSTICE SAMOUR delivered the Opinion of the Court, in which
 CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
 HOOD, JUSTICE GABRIEL, JUSTICE HART, and JUSTICE BERKENKOTTER
 joined.

 OPINION

 SAMOUR, JUSTICE

 ¶1
Section 18-7-402, C.R.S. (2024), the statute proscribing
 soliciting for child prostitution, takes center stage before
 us yet again today. It was just four years ago that we were
 confronted with it in People v. Ross, 2021 CO 9,
 ¶ 1, 479 P.3d 910, 912 ("Ross II"),
 where the prosecution asked us to decide whether the phrase
 "for the purpose of" in section 18-7-402(1)(a) and
 (1)(b) ("subsection (1)(a)" and "subsection
 (1)(b)," respectively), the same subsections under which
 Deshawn Lynn Randolph was charged in this case, describes a
 culpable mental state. The prosecution in Ross II
 argued that a division of the court of appeals had mistakenly
 equated that phrase with the culpable mental state of
 "intentionally" or "with intent." ¶
 1, 479 P.3d at 912. Rather than describe a culpable mental
 state, contended the prosecution, the phrase "for the
 purpose of" merely qualifies the prohibited
 conduct-soliciting another or arranging (or offering to
 arrange) a meeting of persons-by specifying the reason for
 which such conduct must be undertaken: for the purpose of
 prostitution of or by a child. Id. The prosecution
 urged us to hold that, although subsections (1)(a) and (1)(b)
 are silent as to a culpable mental state, they nevertheless
 warrant imputing the culpable mental state of
 "knowingly" or "willfully."[1] Id. at
 ¶ 2, 479 P.3d at 912.

 ¶2
 But alas, we ultimately declined to address the culpable
 mental state question in Ross II because the answer
 didn't impact the outcome of the prosecution's
 appeal. Id. at ¶ 26, 479 P.3d at 916.
Therefore, in the exercise of judicial restraint, we left the
 "dispute for another day." Id. That day is
 today.

 ¶3
 Although we haven't spoken on the issue before, we do not
 stand on fallow ground. The court of appeals has wrestled
 with the applicable culpable mental state in section
 18-7-402(1) on a couple of occasions. The first time was in a
 case that reigned supreme in Colorado for almost three
 decades. See People v. Emerterio, 819 P.2d 516, 518
(Colo.App. 1991), rev'd on other grounds sub nom.
People v. San Emerterio, 839 P.2d 1161 (Colo. 1992). In
 Emerterio, the division held that the requisite
 culpable mental state in subsection (1)(a) is knowingly.
Then, during the last decade, a different division concluded
 that intentionally, not knowingly, is the requisite culpable
 mental state in subsections (1)(a) and (1)(b). See People
 v. Ross, 2019 COA 79, ¶ 30, 482 P.3d 452, 456
("Ross I"), aff'd on other
 grounds, Ross II, ¶ 36, 479 P.3d at 917.
And because we tabled the issue in Ross II, the
 conflict remains.

 ¶4
 At long last, the time has come to settle the dust. We now
 hold that the culpable mental state of soliciting for child
 prostitution under subsections (1)(a) and (1)(b) is knowingly
 (the same culpable mental state expressly designated in

section 18-7-402(1)(c) ("subsection
 (1)(c)")).[2] Because the division below also landed in
 the knowingly camp, we affirm its judgment.

 I.
Facts and Procedural History

 ¶5
 As pertinent here, Randolph was charged with two counts of
 soliciting for child prostitution, in violation of
 subsections (1)(a) and (1)(b). The former proscribes
 soliciting another "for the purpose of
 prostitution" of or by a child, and the latter
 proscribes arranging (or offering to arrange) a meeting of
 persons "for the purpose of prostitution"
 of or by a child. § 18-7-402(1)(a)-(b) (emphases added).

 ¶6
 The charges arose from a series of exchanges Randolph had
 with an investigator from the Arapahoe County Sheriff's
 Office who had created a fake profile by the name of
 "Nicole" on a social networking platform that's
 often used to recruit girls into a life of prostitution.
Randolph offered to arrange sex work for Nicole even though
 she had told him she was just shy of her eighteenth birthday.

 ¶7
 At trial, Randolph's theory of defense was that he never
 actually intended to arrange sex work for Nicole; instead, he
 asserted that his promises of obtaining sex work for her were
 nothing but bravado and bluster, meant to string her along
 until she turned eighteen, at which point he would attempt to
 have sex with her.

Although Randolph acknowledged that such conduct might be
 morally reprehensible, he argued that it didn't amount to
 soliciting for child prostitution because it was not
 undertaken "for the purpose of" prostitution of or
 by a child.

 ¶8
 Consistent with this theory, Randolph proposed a jury
 instruction that defined the phrase "for the purpose
 of" as "conduct performed with an anticipated
 result that is intended or desired." In support of this
 definition, he cited Colorado Ethics Watch v. City &
 County of Broomfield, 203 P.3d 623, 625 (Colo.App.
2009), a civil appeal in which a division of the court of
 appeals leaned on a dictionary definition of the word
 "purpose" to define the phrase "for the
 purpose of." The district court rejected Randolph's
 tendered instruction. Relying on Emerterio, 819 P.2d
 at 518, it determined that the applicable mens rea of
 soliciting for child prostitution was knowingly. And because
 the proffered instruction could have conveyed to the jury
 that the applicable mens rea was intentionally, the court
 refused to give it.

 ¶9
 The jury, therefore, was ultimately instructed as follows
 regarding the elements of the two soliciting charges:

(1) That Randolph,

(2) in the State of Colorado, at or about the date and place
 charged,

(3) knowingly,

(4) solicited another[3] or arranged or offered to arrange a
 meeting of persons,[4]

(5) for the purpose of prostitution of a child or by a child.

 The
 jury found Randolph guilty of both charges, and the district
 court sentenced him to two concurrent nine-year terms in the
 Department of Corrections.

 ¶10
 Randolph appealed, arguing, as relevant here, that the
 district court had improperly instructed the jury regarding
 the mens rea of the soliciting charges. He maintained that
 "for the purpose of" was the equivalent of
 intentionally, and as such, the district court had mistakenly
 refused to give the jury his proposed instruction. A division
 of the court of appeals was unpersuaded and affirmed his
 convictions. People v. Randolph, 2023 COA 7, ¶
 31, 528 P.3d 917, 923. Randolph timely sought our review, and
 we granted his petition.[5]

 ¶11
 Before turning to the merits of the parties' contentions,
 we consider the standard of review that governs our analysis.

 II.
Standard of Review

 ¶12
 The Colorado Constitution vests our General Assembly with the
 "power to define criminal conduct and to establish the
 legal components of criminal liability." Gorman v.
 People, 19 P.3d 662, 665 (Colo. 2000) (citing Colo.
 Const. art. V, § 1). To give effect to a defendant's
 constitutional right to the presumption of innocence, the
 trial court must properly instruct the jury as to each
 element of the crime charged. Garcia v. People, 2022
 CO 6, ¶ 15, 503 P.3d 135, 140.

 ¶13
We review de novo whether a jury instruction is an accurate
 and clear recitation of the law. Riley v. People,
 266 P.3d 1089, 1092 (Colo. 2011). This task requires us to
 interpret the statute defining the charged offense, which is
 likewise subject to de novo review. See McCoy v.
 People, 2019 CO 44, ¶ 37, 442 P.3d 379, 389.

 ¶14
 Our primary purpose when interpreting a statute is to
 ascertain and give effect to the legislature's intent,
 looking first to the plain and ordinary meaning of the words
 used. Id. We must read a statute as a whole, aiming
 to give consistent, harmonious, and sensible effect to all
 its parts. Id. at ¶ 38, 442 P.3d at 389. A
 reading that renders any words or phrases in a statute
 superfluous or leads to an absurd result is disfavored.
Id.

 ¶15
 If, based on our interpretation of the relevant statute, we
 determine that an instruction was a correct and clear
 statement of the law, we review the trial court's
 decision to give it to the jury for an abuse of discretion.
Garcia, ¶ 18, 503 P.3d at

 140. When we conclude that a jury instruction was provided in
 error and that the error was properly preserved, our
 reversal-determining standard is constitutional harmless
 error, which requires us to reverse unless the prosecution
 proves that the error was harmless beyond a reasonable doubt.
Id.

 III.
Analysis

 ¶16
We begin by setting forth the statute proscribing soliciting
 for child prostitution. Then, looking back in our rearview
 mirror, we review Colorado's jurisprudence addressing the
 applicable culpable mental state in subsections (1)(a) and
 (1)(b). Specifically, we dissect the conflicting decisions
 from the court of appeals in Emerterio and Ross
 I. On the heels of that discussion, we explore in some
 detail the road taken by the division in this case. We
 proceed to discern the legislature's intent and hold
 that, although subsections (1)(a) and (1)(b) do not
 explicitly provide a culpable mental state, the legislature
 meant for knowingly to be the culpable mental state in each
 of them. Applying that holding here, we conclude that the
 district court did not err in instructing the jury.

 A.
The Statute Proscribing Soliciting for Child
 Prostitution

 ¶17
Section 18-7-402(1) sets out three methods of committing the
 crime of soliciting for child prostitution. The crime is
 committed when a person:

(a) Solicits another for the purpose of prostitution of a
 child or by a child;

(b) Arranges or offers to arrange a meeting of persons for
 the purpose of prostitution of a child or by a child; or

(c) Directs another to a place knowing such direction is for
 the purpose of prostitution of a child or by a child.

§ 18-7-402(1). We focus on subsections (1)(a) and (1)(b)
 because, as relevant here, Randolph was charged only pursuant
 to those two subsections. But because we're duty bound to
 interpret section 18-7-402 as a whole and to give harmonious,
 consistent, and sensible effect to all its parts, we account
 for subsection (1)(c) in our analysis.

 B.
Relevant Colorado Jurisprudence (Emerterio vs.
 Ross I) and the Division's Decision in This
 Case

 ¶18
 Thirty-four years ago, a division of the court of appeals
 upheld a trial court's instruction informing the jury
 that the applicable culpable mental state in subsection
 (1)(a) is knowingly. Emerterio, 819 P.2d at 518. The
 division in Emerterio concluded that, although
 subsection (1)(a) does not expressly contain a culpable
 mental state, one is nevertheless required based on the
 proscribed conduct: "The gist of the crime of
 solicitation is that the defendant is aware of what he is
 doing, within the definition of the term
 'knowingly.'" Id.; see also
§ 18-1-503(2), C.R.S. (2024) (stating that even when
 "no culpable mental state is expressly designated in a
 statute defining an offense, a culpable mental state may
 nevertheless be required . . . if the proscribed conduct
 necessarily involves such a culpable mental

 state"). The focus of the crime, explained the
 Emerterio division, is "the initial
 solicitation, not the ultimate sexual act which might
 occur." 819 P.2d at 518.

 ¶19
 The division's decision in Emerterio remained
 king of the hill in Colorado for many years. Then, in 2019, a
 different division of the court of appeals threatened its
 imperium. See Ross I, ¶ 44, 482 P.3d at 458.
The Ross I division parted company with
 Emerterio because it disagreed with the premise that
 subsection (1)(a) fails to expressly designate a culpable
 mental state. Id. Instead, reasoned the Ross
 I division, "for the purpose of" in
 subsections (1)(a) and (1)(b) supplies the culpable mental
 state of "specific intent" or
 "intentionally." ¶¶ 30, 44, 482 P.3d at
 456, 458. Further, the Ross I division was critical
 of the Emerterio division for not addressing
 "what effect the 'for the purpose of' language
 might have . . . on the applicable culpable mental
 state." ¶ 44, 482 P.3d at 458.

 ¶20
 In clearing a different path, the Ross I division
 noted that there appeared to be a new debate about
 Emerterio's "application of the
 'knowing' culpable mental state to the crime of
 soliciting for child prostitution." ¶ 28, 482 P.3d
 at 456. Continuing, the division stated that the Colorado
 Supreme Court Model Criminal Jury Instructions Committee (the
 "Committee") had done an about-face on its position
 regarding the applicable culpable mental state in subsections
 (1)(a) and (1)(b). Id. at ¶ 29, 482 P.3d at
 456. In 1991, when Emerterio was announced, the
 Committee had concluded that knowingly is the applicable
 culpable mental

 state in those subsections. Id. at ¶ 28, 482
 P.3d at 456 (citing CJI-Crim. 24:03 (1983)). But by 2019,
 when Ross I was decided, the Committee had changed
 its tune, writing that it was now of the view that the
 language of subsections (1)(a) and (1)(b) describes a
 culpable mental state "by requiring that the
 solicitation be for the purpose of child prostitution."
Id. at ¶ 29, 482 P.3d at 456 (quoting
 COLJI-Crim. 7-4:01 cmt. 3 (2018) ("comment 3"));
see also COLJI-Crim. 7-4:02 cmt. 3 (2018).

 ¶21
 The Ross I division was persuaded by comment 3. Like
 the Committee, it homed in on the phrase "for the
 purpose of." It then turned to the Model Penal
 Code's ("MPC") most culpable mental state,
 purposely, which it regarded as comparable to the Colorado
 Criminal Code's most culpable mental state,
 intentionally. Ross I, ¶¶ 32, 34-36, 482
 P.3d at 457. Relying on a couple of dictionary definitions
 and case law from both Colorado and foreign jurisdictions,
 the Ross I division equated "for the purpose
 of" with intentionally and treated the two terms as
 interchangeable. Id. at ¶¶ 31-38, 482 P.3d
 at 456-58.

 ¶22
We granted the prosecution's petition for certiorari in
 Ross II but ultimately declined to resolve the
 division split, withholding judgment "on the soundness
 of the division's conclusion that the phrase 'for the
 purpose of' in subsections [(1)(a) and (1)(b)] describes
 the culpable mental state of with intent." ¶ 6 n.2,
 479 P.3d at 913 n.2. We did, however, decide that subsections
 (1)(a) and (1)(b) require a culpable mental state and that
 this mental state-be it intentionally or

 knowingly-modifies every element of each offense,
 "including that the purpose of the defendant's
 conduct was the prostitution of or by a child."
Id. at ¶ 19, 479 P.3d at 915.

 ¶23
 That brings us to the division in this case. It found itself
 at a crossroads: In one direction was Emerterio; in
 the other, Ross I.[6] The division was bound by
 neither, so it had a choice to make. Campbell v.
 People, 2020 CO 49, ¶ 41, 464 P.3d 759, 767
("[O]ne division of the court of appeals is not bound by
 another division ...." (citation omitted)). It
 ultimately took the road more traveled-the older road
 bulldozed by Emerterio-and held that the requisite
 mens rea of soliciting for child prostitution under
 subsections (1)(a) and (1)(b) is knowingly.[7]
Randolph, ¶ 31, 528 P.3d at 923.

 ¶24
 The Randolph division declined to fall in with
 Ross I for a handful of reasons. First, although
 acknowledging the Committee's change of heart between
 1991, when Emerterio saw the light of day, and 2009,
 when Ross I came into existence, it pointed out that
 model jury instructions are not binding law. Id. at
 ¶ 22, 528 P.3d at 922.

Particularly where, as here, the Committee didn't cite
 any authority in support of its position, the division was
 unwilling to overlook "the fact that the model jury
 instructions and the accompanying commentary are forged
 neither in the furnace of the legislative process nor the
 crucible of the adversarial judicial arena."
Id.

 ¶25
 Second, the Randolph division rejected Ross
 I's reliance on dictionary definitions instead of
 the legislature's own express definition of
 "culpable mental state," which is limited to four
 mental states-"intentionally,"
"knowingly," "recklessly," and
 "criminal negligence"-none of which is
 "purposely" or "for the purpose of."
Id. at ¶ 23, 528 P.3d at 922; §
 18-1-501(4), C.R.S. (2024) (defining "[c]ulpable mental
 state"). "It is not for us to supplement that
 list," remarked the division. Randolph, ¶
 23, 528 P.3d at 922.

 ¶26
 Third, the Randolph division disagreed with equating
 the most culpable mental state in the MPC (purposely) with
 the most culpable mental state in Colorado's Criminal
 Code (intentionally) because purposely is defined by the MPC
 so as to include the nature of the conduct, the attendant
 circumstances, and the result, while intentionally is defined
 in our Criminal Code only in terms of a result.
Randolph, ¶¶ 24-26, 528 P.3d at 922-23.
Thus, concluded the division, Ross I erred by
 considering the two culpable mental states substitutable.
Id.

 ¶27
 Fourth, the Randolph division cautioned that
 treating "for the purpose of" in subsections (1)(a)
 and (1)(b) as denoting the culpable mental state of
 intentionally would lead to an illogical interpretation of
 subsection (1)(c), which makes it unlawful to direct another
 to a place "knowing such direction is for
 the purpose of" prostitution of or by a child.
¶ 28, 528 P.3d at 923 (quoting § 18-7-402(1)(c)).
The Randolph division pointed out that if, pursuant
 to Ross I, "for the purpose of" were
 construed to mean intentionally, then subsection (1)(c) would
 require the prosecution to prove that an accused
 "knew that his intent" was to
 cause prostitution of or by a child, "an illogical
 conflation of two mental states." Id.

 ¶28
 Lastly, the Randolph division observed that, when
 interpreting other statutes lacking an express designation of
 the mens rea, this state's appellate courts have
 generally imputed knowingly "in the absence of a clear
 reason" to impute "a more stringent mental
 state." ¶ 30, 528 P.3d at 923 (first citing
 Gorman, 19 P.3d at 666; then citing People v.
 Moore, 674 P.2d 354, 358 (Colo. 1984); and then citing
 People v. Lawrence, 55 P.3d 155, 163 (Colo.App.
2001), abrogated on other grounds by Crawford v.
 Washington, 541 U.S. 36 (2004)). The division saw
 neither a clear reason to impute a more culpable mental state
 than knowingly nor a basis to treat subsections (1)(a) and
 (1)(b) differently than other statutory provisions that are
 silent on the applicable culpable mental state. See
id. at ¶¶ 30-31, 528 P.3d at 923.

 ¶29
 With that background in mind, we are at the moment of truth.
Who got it right: Emerterio or Ross I? We
 conclude that Emerterio did and thus overrule
 Ross I and affirm the division below. As we explain
 next, our legislature meant for the culpable mental state of
 knowingly, which is expressly designated in subsection
 (1)(c), to apply in subsections (1)(a) and (1)(b).

 C.
Discerning the Legislature's Intent

 ¶30
We start at the beginning. In decrypting our
 legislature's pertinent intent, our first order of
 business is to review some foundational tenets vis-a-vis
 criminal culpability.

 1.
Foundational Tenets Regarding Criminal Culpability

 ¶31
"The minimum requirement for criminal liability is the
 performance by a person of conduct which includes a voluntary
 act or the omission to perform an act which he is physically
 capable of performing." § 18-1-502, C.R.S. (2024).
If such conduct is all that the commission of an offense
 requires, then "the offense is one of 'strict
 liability.'" Id. The vast majority of
 offenses, however, are not strict liability
 offenses; rather, a defendant must typically act with a
 culpable mental state to be criminally liable. See
Gorman, 19 P.3d at 665. As we have observed, to subject
 someone to criminal liability, there must generally be
 "concurrence of the actus reus, an unlawful act, and the
 mens rea, a culpable mental state." Id.

 ¶32
 When a crime requires proof of a particular culpable mental
 state, it is "ordinarily designated" in the statute
 defining the offense by the use of one of the following
 terms: "intentionally," "knowingly,"
"recklessly," or "criminal negligence."
§ 18-1-503(1).[8] Section 18-1-501(4), in turn, defines
 "[c]ulpable mental state" as
 "intentionally," "knowingly,"
"recklessly," or "criminal negligence."

 2.
The Legislature Did Not Expressly Designate One of the Four
 Ordinary Culpable Mental States in Subsections (1)(a) and
 (1)(b)

 ¶33
 Neither subsection (1)(a) nor subsection (1)(b) includes any
 of the four terms our legislature has selected to ordinarily
 define culpable mental states in Colorado. And,
 correspondingly, neither section 18-1-501(4) nor section
 18-1-503(1) identifies "for the purpose of" as a
 culpable mental state.

 ¶34
 Randolph insists, however, that subsections (1)(a) and (1)(b)
do expressly designate a culpable mental state.
Taking a page from comment 3, he hitches his

 wagon to the phrase "for the purpose of" and
 maintains that it is, itself, a culpable mental
 state.[9] And, borrowing from a court of appeals
 opinion affirming an administrative law judge's
 plain-meaning interpretation of "for the purpose
 of" in a civil statute, Randolph maintains that the
 phrase "indicates an anticipated result that is
 intended or desired." Colo. Ethics Watch, 203
 P.3d at 625 (emphasis added).[10]

 ¶35
We reject Randolph's contention. Had the legislature
 meant to designate "for the purpose of" as the
 applicable culpable mental state in subsections (1)(a) and
 (1)(b), it presumably would have done so either by
 identifying the phrase as a "culpable mental state"
 in sections 18-1-501(4) and 18-1-503(1) or by otherwise
 making its intent known in section 18-7-402(1). It did
 neither.

 ¶36
"Words and phrases," such as culpable mental state,
 "that have acquired a technical or particular meaning .
 . . by legislative definition . . . shall be
 construed accordingly." § 2-4-101, C.R.S. (2024)
(emphasis added). Adhering to this precept, a conviction of
 any crime, other than a strict liability crime, generally
 requires proof that the defendant acted with one of the four
 culpable mental states

 ordinarily designated by our legislature. People v.
 Hall, 999 P.2d 207, 217 (Colo. 2000). If the legislature
 had intended subsections (1)(a) and (1)(b) to fall within the
 extraordinary category of statutes that may contain a
 culpable mental state that is not designated by one of the
 four terms used in sections 18-1-501(4) and 18-1-503(1), we
 trust that it would have made that intent clear.

 ¶37
We impliedly recognized in Ross II that the
 legislature did not sanction "for the purpose of"
 in subsections (1)(a) and (1)(b) as a culpable mental state.
While Ross II shelved the question we meet head-on
 today, it made clear that the culpable mental state of
 soliciting for child prostitution under subsections (1)(a)
 and (1)(b) must apply to every element of the crime,
 including the element of "for the purpose of
 prostitution of a child or by a child." Ross
 II, ¶ 4, 479 P.3d at 912; §
 18-7-402(1)(a)-(b). We reasoned that "there is no basis
 for exempting any part of the purpose element from
 application of such culpable mental state." Ross
 II, ¶ 27, 479 P.3d at 916. If the mens rea must
 apply to the element of "for the purpose of
 prostitution of a child or by a child," then the
 legislature could not have meant "for the purpose
 of" to be the mens rea itself.

 ¶38
 Significantly, when our General Assembly overhauled the
 Colorado Criminal Code in 1971, one of its goals was to
 eliminate the confusion stemming from the wide array of
 ambiguous terms defining the culpable mental state
 requirements for criminal offenses. People v. Vigil,
 127 P.3d 916, 931 (Colo. 2006).

Such terms included "general criminal intent,"
"mens rea," "presumed intent,"
"malice," "willfulness," and
 "scienter." Id. Our General Assembly put
 an end to the practice of willy-nilly labeling culpable
 mental states: It proclaimed that, moving forward, a culpable
 mental state would ordinarily be designated by the terms
 "intentionally," "knowingly,"
"recklessly," or "criminal negligence."
§ 18-1-503(1). Further, it defined each of the newly
 minted culpable mental states. § 18-1-501(3), (5), (6),
 (8). As relevant here, it pronounced:

A person acts "intentionally" or
 "with intent" when his conscious objective
 is to cause the specific result proscribed by the statute
 defining the offense....

A person acts "knowingly" or
 "willfully" with respect to conduct or to
 a circumstance described by a statute defining an offense
 when he is aware that his conduct is of such nature or that
 such circumstance exists. A person acts "knowingly"
 or "willfully," with respect to a result of his
 conduct, when he is aware that his conduct is practically
 certain to cause the result.

§ 18-1-501(5)-(6) (emphases added). And the legislature
 declared that all offenses with a culpable mental state of
 intentionally would be specific intent crimes, while all
 offenses with a culpable mental state of knowingly would be
 general intent crimes. Id.

 ¶39
 In revamping our Criminal Code, the legislature drew heavily
 from the MPC, which made its own substantial modifications
 surrounding the culpable mental state requirements for
 criminal offenses. See Vigil, 127 P.3d at 931; Model
 Penal Code § 2.02, at 225-27, 229-30 (Am. L. Inst., Off.
 Draft and Revised

 Comments 1985). The MPC, however, designated purposely as the
 most culpable of four mens rea-the other three being
 knowledge, recklessness, and negligence. See Model
 Penal Code § 2.02(2)(a)-(d), at 225-26. Yet, despite
 being aware of the MPC's use of purposely as a culpable
 mental state, our General Assembly did not incorporate it
 into our Criminal Code. This was clearly a deliberate choice,
 and one we must respect. Dep't of Revenue v. Agilent
 Techs., Inc., 2019 CO 41, ¶ 16, 441 P.3d 1012, 1016
("[W]e must respect the legislature's choice of
 language ....").

 ¶40
 But not only did our General Assembly deviate from the MPC by
 using intentionally instead of purposely as the most culpable
 mental state, it ultimately defined the former more narrowly
 than the MPC defined the latter. Our General Assembly defined
 intentionally only in terms of a required result; the MPC, by
 contrast, defined purposely in terms of conduct, attendant
 circumstances, and/or a required result:

A person acts purposely with respect to a material element of
 an offense when: (i) if the element involves the nature
 of his conduct or a result thereof, it is his
 conscious object to engage in conduct of that nature or to
 cause such a result; and (ii) if the element involves the
 attendant circumstances, he is aware of the
 existence of such circumstances or he believes or hopes that
 they exist.

 Model
 Penal Code § 2.02(2)(a), at 225 (emphases added).

 ¶41
 Hence, the MPC's purposely is by no means an analogue of
 our Criminal Code's intentionally. Rather, the MPC's
 most culpable mental state appears to be a hybrid of our
 Criminal Code's intentionally and knowingly.

 ¶42
 The Ross I division was therefore wrong to consider
 the MPC's purposely and our Criminal Code's
 intentionally as fungible. And, relatedly, it was a leap too
 far for that division to suggest that the General Assembly
 expressly designated the culpable mental state of
 intentionally through the phrase "for the purpose
 of" in subsections (1)(a) and (1)(b). Ross I,
 ¶¶ 8, 30, 482 P.3d at 454, 456. If the legislature
 meant for the culpable mental state of intentionally to apply
 in those subsections, why didn't it just say,
 "intending the prostitution of a child or by a
 child," instead of "for the purpose of prostitution
 of a child or by a child"? Alternatively, why didn't
 it otherwise indicate that it used "for the purpose
 of" in subsections (1)(a) and (1)(b) to designate the
 culpable mental state of intentionally?

 ¶43
 Our decision in Vigil supports our conclusion that,
 absent evidence of a contrary legislative intent, "for
 the purpose of" doesn't reflect our
 legislature's designation of the culpable mental state of
 intentionally. The crime charged there, sexual assault on a
 child, was defined by two statutory provisions, section
 18-3-405(1), C.R.S. (2024), and section 18-3-401(4), C.R.S.
 (2024). The ambiguity arose from the use of
 "knowingly" in the former and "knowing"
 and "for the purposes of" in the latter.
Vigil, 127 P.3d at 931. Vigil contended, and a
 division of the court of appeals had agreed, that "for
 the purposes of" demonstrated that the legislature meant
 to categorize sexual assault on a child as a specific
 intent crime and that, therefore, the defense of
 voluntary intoxication should have been

 available to him at trial. Id. at 930-31; see
 also § 18-1-804(1), C.R.S. (2024) (providing that
 voluntary intoxication is a defense to specific intent crimes
 but not to general intent crimes). We, however, were unmoved
 by that proposition and held that sexual assault on a child
 was a general intent crime. Vigil, 127 P.3d
 at 931. In so doing, we relied on: the use of
 knowingly and knowing in the statutes defining the offense;
 the omission of the term intentionally in those statutes; and
 the statutory definitions of intentionally and knowingly,
 which we perceived provided "a strong basis" for
 our decision. Id. In light of these clues, the
 phrase "for the purposes of" ultimately played no
 meaningful role in our quest to discern the legislature's
 intent. Id.

 ¶44
 Here, while subsections (1)(a) and (1)(b) do not refer to
 knowingly or knowing, they do omit intentionally. Further,
 not only is there a dearth of evidence that the legislature
 meant the phrase "for the purpose of" in those
 subsections to designate the culpable mental state of
 intentionally, there is actually evidence proving just the
 opposite. Were we to construe "for the purpose of"
 in subsections (1)(a) and (1)(b) to mean intentionally, as
 Ross I did and as Randolph intimates, it would
 render subsection (1)(c) nonsensical. Subsection (1)(c) makes
 it a crime to "[d]irect[] another to a place
 knowing such direction is for the purpose
 of prostitution of a child or by a child." §
 18-7-402(1)(c) (emphases added). To consider "for the
 purpose of" in this subsection as the culpable mental
 state of

 intentionally would thus require proof that an offender
 directed another to a place knowing that the
 intent in providing that direction was prostitution
 of or by a child. That would be illogical. Because subsection
 (1)(c) explicitly requires the culpable mental state of
 knowingly, the phrase "for the purpose of" in that
 subsection cannot be equated with the culpable mental state
 of intentionally.

 ¶45
We may not give the phrase "for the purpose of" one
 meaning in subsection (1)(c) and a different meaning in
 subsections (1)(a) and (1)(b) without clear evidence that
 this is what the legislature had in mind. "Where the
 legislature has used the 'same words or phrases in
 different parts of a statute,' we ascribe a consistent
 meaning to those words unless there is a 'manifest
 indication to the contrary.'" Przekurat ex rel.
 Przekurat v. Torres, 2018 CO 69, ¶ 8, 428 P.3d 512,
 514 (quoting Colo. Common Cause v. Meyer, 758 P.2d
 153, 161 (Colo. 1988)).

 ¶46
We now conclude that subsections (1)(a) and (1)(b) are simply
 mum on a culpable mental state.[11] That both subsections use
 "for the purpose of" doesn't alter this
 determination because there is no basis to believe that the
 legislature meant to use the phrase to commission a new
 culpable mental state. And, contrary

 to the division's holding in Ross I and
 Randolph's suggestion, there is also no basis to believe
 that the legislature meant to designate the culpable mental
 state of intentionally through that phrase.[12]

 3.
A Culpable Mental State Must Nevertheless Be Imputed

 ¶47
 Legislative silence on a culpable mental state "is
 generally not construed as an indication that no culpable
 mental state is required." People v. Naranjo,
 612 P.2d 1099, 1102 (Colo. 1980). Thus, even where, as here,
 statutory provisions do not expressly designate a culpable
 mental state, one "may nevertheless be required for the
 commission of th[e] offense, or with respect to some or all
 of the material elements thereof, if the proscribed conduct
 necessarily involves such a culpable mental state."
§ 18-1-503(2); see also Moore, 674 P.2d at 358.

 ¶48
 The question, then, is whether the conduct proscribed by
 subsections (1)(a) and (1)(b) necessarily involves a culpable
 mental state. We answered this question with a resounding yes
 in Ross II. See ¶ 19, 479 P.3d at 915
(deciding that subsections (1)(a) and (1)(b) required a
 culpable mental state).

 ¶49
We reiterate what we said four years ago there: Any assertion
 that soliciting for child prostitution under either
 subsection (1)(a) or subsection (1)(b) is a strict liability
 crime doesn't hold water. Id. at ¶ 24, 479
 P.3d at 915. Further, we continue to be unaware of any basis
 to infer a culpable mental state of recklessly or criminal
 negligence from subsections (1)(a) and (1)(b). Id.
(narrowing the applicable culpable mental state in
 subsections (1)(a) and (1)(b) to two choices, intentionally
 or knowingly). Nothing in the language of those subsections
 is logically tied to recklessness or criminal negligence.
See Lawrence, 55 P.3d at 163. Not surprisingly, no
 party here has made a pitch for either of these two culpable
 mental states. See Ross II, ¶ 24, 479 P.3d at
 915. Accordingly, that leaves us with only two options:
 intentionally and knowingly. See id. at ¶ 19,
 479 P.3d at 915.

 4.
To Impute Intentionally or to Impute Knowingly-That Is the
 Question

 ¶50
 Our North Star at this juncture of the analysis remains the
 legislature's intent. Turning first to the plain language
 of section 18-7-402(1), the prohibited conduct is soliciting
 another, arranging (or offering to arrange) a meeting with
 others, or directing another. § 18-7-402(1)(a)-(c);
Emerterio, 819 P.2d at 518. Of

 course, any of these acts must be undertaken for a particular
 reason: prostitution of or by a child. This is an attendant
 circumstance that the prosecution must prove.

 ¶51
 Of particular relevance here, however, there is no
 requirement in section 18-7-402(1) that the offender's
 conduct have a particular effect or cause a particular
 result. The crux of the crime is not the ultimate sexual act,
 which may or may not occur, but the solicitation, meeting
 arrangement, offer to arrange a meeting, or direction to a
 place, accompanied by the purpose behind such conduct.
Ross II, ¶ 32, 479 P.3d at 917; see also
Emerterio, 819 P.2d at 518 ("The focus of the crime
 [of soliciting for child prostitution] is the initial
 solicitation, not the ultimate sexual act which might
 occur."). Thus, section 18-7-402(1) involves only
 conduct-soliciting, arranging (or offering to arrange) a
 meeting, or directing to a place-and an attendant
 circumstance-the reason for the conduct is prostitution of or
 by a child.

 ¶52
 This conclusion is buoyed by our jurisprudence on the crime
 of soliciting for prostitution, section 18-7-202(1), C.R.S.
 (2024) (as distinguished from the crime of soliciting for
 prostitution of or by a child, section 18-7-402(1)).
In People v. Mason, 642 P.2d 8, 13 (Colo. 1982), we
 observed that the criminal character of the crime of
 soliciting for prostitution "does not depend upon the
 discretionary acts of third persons." Elucidating, we
 strongly implied that section 18-7-202(1) doesn't require
 a result: "The prostitute's subsequent decision to
 engage or not to engage in a sexual act with her customer is
 not essential" to the crime. Id. Rather, we
 reasoned,

 the crime is complete when the offender engages in the
 prohibited conduct in the presence of the requisite attendant
 circumstance, i.e., when the offender solicits another for
 prostitution, arranges (or offers to arrange) a meeting of
 persons for prostitution, or directs another to a place
 knowing that such direction is for prostitution. Id.
Hence, Mason's interpretation of section
 18-7-202(1) is in lockstep with the interpretation of section
 18-7-402(1) in Ross II and Emerterio.

 ¶53
 Given our legislature's decision to describe the crime of
 soliciting for child prostitution without requiring a result,
 we conclude that the culpable mental state of knowingly fits
 subsections (1)(a) and (1)(b) like a glove. Knowingly is a
 broad concept that may attach to conduct "when [a
 person] is aware that his conduct is of such nature"; to
 an attendant circumstance, "when [a person] is aware . .
 . that such circumstance exists"; and/or to a result,
 "when [a person] is aware that his conduct is
 practically certain to cause the result." §
 18-1-501(6). By way of example, knowingly may apply to: the
 physical act of assaulting another
 ("conduct"); the false status of a
 statement or the stolen nature of property (an attendant
 "circumstance"); and the death or serious
 bodily injury caused or inflicted (a
 "result"). People v. Derrera, 667
 P.2d 1363, 1367 (Colo. 1983).

 ¶54
 In stark contrast to the culpable mental state of knowingly,
 the culpable mental state of intentionally fits like a square
 peg in a round hole in subsections (1)(a) and (1)(b). We
 reiterate that intentionally is defined solely in

 terms of a required result: The "conscious
 objective" of the accused must have been to bring about
 the specific result prohibited by the statute defining the
 offense.[13] § 18-1-501(5); see also People
 v. Krovarz, 697 P.2d 378, 383 (Colo. 1985) (explaining
 that "[t]he mental state of intention is defined
 relative to result but not relative to conduct or
 circumstances," which makes knowledge "the most
 culpable state attached to either of these latter two types
 of elements"); People v. Childress, 2015 CO
 65M, ¶¶ 24, 29, 363 P.3d 155, 162, 164 (explaining
 that the legislature limited intentionally "to a
 culpable mental state defined exclusively in terms of having
 a conscious objective to cause a particular result," and
 noting that circumstances attending the required act refer to
 "those elements of the offense describing the prohibited
 act itself and the circumstances surrounding its
 commission," not to an element "requiring that such
 act have a particular effect, or cause a particular
 result").

 ¶55
 Because subsections (1)(a) and (1)(b) define soliciting for
 child prostitution in terms of conduct and an attendant
 circumstance without requiring that the prohibited act have a
 particular effect or cause a particular result, applying the
 culpable mental state of intentionally in those subsections,
 as Ross I did and as

 Randolph impliedly prompts us to do, is ill-suited at best.
As we explained in Krovarz, attaching intent
 "to either conduct or circumstances" in a statute
 is "superfluous." 697 P.2d at 383; see also
McCoy, ¶ 38, 442 P.3d at 389 (cautioning that we
 must avoid interpretations that render any statutory term
 superfluous).

 ¶56
 Our reasoning in this case may be expressed as follows:

• Subsections (1)(a) and (1)(b) proscribe certain
 conduct when it is accompanied by a particular attendant
 circumstance, but they do not require a result.

• The culpable mental state of knowingly is defined in
 terms of conduct, and/or the attendant circumstances, and/or
 the result of the offense.

• The culpable mental state of intentionally is defined
 only in terms of the result of the offense.

• Therefore, knowingly is, hands-down, the culpable
 mental state that best fits in subsections (1)(a) and (1)(b).

 ¶57
 In any event, in the past, the court of appeals and our court
 alike have generally imputed the culpable mental state of
 knowingly when non-strict-liability statutory provisions are
 silent on a culpable mental state and there is no clear
 reason to resort to a different culpable mental state.
See Gorman, 19 P.3d at 666 (recognizing that
 "we have held that the mens rea of knowingly applies to
 the act enunciated in the statute . . . when the statute does
 not specify a culpable mental state"); Moore,
 674 P.2d at 358 (imputing the culpable mental state of
 knowingly in the counterfeit controlled substances statute);
People v. Bridges, 620 P.2d 1, 3 (Colo. 1980)
(concluding that the culpable mental state of knowingly is
 implied by the

 statute proscribing engaging in a riot), overruled in
 part on other grounds by People v. Jeffers, 690 P.2d 194
(Colo. 1984); see also Lawrence, 55 P.3d at 163
(inferring, from a statutory provision proscribing the
 wasteful destruction of wildlife, the culpable mental state
 of "knowingly" because "[n]othing in [the
 statutory] language logically is tied to 'specific
 intent,' 'recklessness,' or
 'neglect'").

 ¶58
 But what about where, as here, such statutory provisions
 include the phrase "for the purpose of"? This is
 not our first rodeo at attempting to decipher the
 legislature's intent in that scenario either. Our
 decision in Candelaria v. People, 2013 CO 47, 303
 P.3d 1202, is illustrative.

 ¶59
 There, we were called upon to interpret "for the purpose
 of" in section 18-3-414.5(1)(a)(III), C.R.S. (2024),
 which is part of the definition of sexually violent predator
 ("SVP"). The pertinent statutory provision in
 Candelaria defined SVP in part as an offender
 "[w]hose victim was . . . a person with whom the
 offender established or promoted a relationship primarily
 for the purpose of sexual victimization."
§ 18-3-414.5(1)(a)(III) (emphasis added). We noted that
 a division of the court of appeals had previously determined
 that this clause "obligate[d] the trial court to find
 that an offender 'had a specific intent in
 forming the relationship' with the victim for the
 purposes of sexual victimization." Candelaria,
 ¶ 13, 303 P.3d at 1205 (emphasis added) (quoting
People v. Stead, 66 P.3d 117, 122 (Colo.App. 2002)).

 ¶60
We rejected Stead's construction for several
 reasons, including that "the plain language of the
 [statute] . . . does not contain a specific intent
 requirement." Id. at ¶ 14, 303 P.3d at
 1205. We explained that when the General Assembly wishes to
 include a specific intent requirement in a statute, it
 "typically employs the terms 'intentionally' and
 'with intent.'" Id. Because the
 legislature hadn't done so in section
 18-3-414.5(1)(a)(III), and because the remainder of the SVP
 statute didn't "otherwise suggest a legislative
 intent to require a finding of the offender's specific
 intent as a precursor to SVP designation," we refused to
 read a specific intent requirement into the statute.
Candelaria, ¶ 14, 303 P.3d at 1205. We added
 that endorsing the division's decision in Stead
 would have been tantamount to judicial legislation "to
 accomplish something the [statute's] plain language does
 not suggest, warrant, or mandate." Id.

 ¶61
 It is no different here. Without the express designation of
 the culpable mental state of intentionally in subsections
 (1)(a) and (1)(b) or any indication that our General Assembly
 meant those subsections to describe specific intent crimes,
 we are unwilling to engage in judicial legislation and impute
 the culpable mental state of intentionally.

 ¶62
We acknowledge that we have said in the past that purpose is
 synonymous with intent. See People v. Frysig, 628
 P.2d 1004, 1010 (Colo. 1981). But when we have done so, we
 have meant the common meaning of intent, as
 distinguished from

 the legal meaning of specific intent.
Id. (stating that "'purpose' as used in
 the criminal attempt statute is the equivalent of the common
 meaning of the word 'intent'"). In
 Frysig, we made note of the legislature's
 decision in 1977 to revise the definition of
 "substantial step" in the criminal attempt statute
 by replacing "'intent' . . . [with]
'purpose,' a word of like purport but without the
 specific intent definitional consequences which section
 18-1-501 . . . attaches to the term 'with
 intent.'" Id. at 1009. Put differently, we
 equated purpose with the common meaning of intent.
Id.

 ¶63
 Similarly, in Childress, we analogized purpose with
 "intent, in the commonly understood sense." ¶
 29, 363 P.3d at 164 (stating that the "'dual mental
 state requirement' of complicitor liability in this
 jurisdiction is more properly characterized as a requirement
 that the complicitor have," among other things,
 "the intent, in the commonly understood sense of
 desiring or having a purpose or design, to aid, abet,
 advise, or encourage the principal in his criminal act or
 conduct" (emphasis added)). Here, we understand
 "for the purpose of," as used in subsections (1)(a)
 and (1)(b), to refer to the reason why someone does something
 or to the motivation someone has for doing something-that is,
 intent, in the commonly understood sense-not to the culpable
 mental state of intentionally defined in section 18-1-501(5).

 ¶64
 Consistent with our case law, today we infer that the
 culpable mental state of knowingly applies in subsections
 (1)(a) and (1)(b). We conclude that, although these
 subsections do not expressly include a culpable mental state,
 the culpable mental state of knowingly must nevertheless be
 imputed.[14]

 5.
Recap: Proof Required for the Crime of Soliciting for Child
 Prostitution

 ¶65
 In sum, to be guilty of soliciting for child prostitution, an
 offender must act knowingly-i.e., be "aware of what he
 is doing"-in soliciting another for the purpose of
 prostitution of or by a child, arranging (or offering to
 arrange) a meeting with others for the purpose of
 prostitution of or by a child, or directing another to a
 place for the purpose of prostitution of or by a child.
Emerterio, 819 P.2d at 518; see also Ross
 II, ¶ 4, 479 P.3d at 912 (stating that, regardless
 of

 whether the culpable mental state of soliciting for child
 prostitution is intentionally or knowingly, that culpable
 mental state applies to every element of the offense);
Gorman, 19 P.3d at 665 (applying the culpable mental
 state of knowingly to the act of contributing to the
 delinquency of a minor because "a person must know that
 he or she is inducing, aiding or encouraging someone to
 violate a 'federal or state law,' a 'municipal or
 county ordinance,' or a 'court order'").

 D.
Application

 ¶66
 Randolph contends that the district court erred by
 instructing the jury that the crime of soliciting for child
 prostitution, as charged here, required proof that he
 knowingly, rather than intentionally, solicited or arranged
 (or offered to arrange) a meeting for the purpose of
 prostitution of or by a child. Because we have now held that
 the mens rea for the crime of soliciting for child
 prostitution under subsections (1)(a) and (1)(b) is
 knowingly, we see no error in the challenged jury
 instructions.

 IV.
Conclusion

 ¶67
 For the foregoing reasons, we conclude that the applicable
 culpable mental state in subsections (1)(a) and (1)(b) is
 knowingly. Because the division below reached the same
 determination, we affirm its judgment.

---------

[1] In the interest of brevity, throughout
 this opinion, we generally refer to "intentionally"
 and "knowingly" as shorthand for the culpable
 mental states defined in section 18-1-501(5)-(6), C.R.S.
 (2024) (listing "'[i]ntentionally' or 'with
 intent'" and "'[k]nowingly' or
 'willfully,'" respectively).

[2] Subsection (1)(c) proscribes
 "[d]irect[ing] another to a place knowing such direction
 is for the purpose of" prostitution of or by a child.
The prosecution didn't charge Randolph pursuant to this
 subsection.

[3] See §
 18-7-402(1)(a).

[4] See §
 18-7-402(1)(b).

[5] We agreed to review the following
 question:

Whether the trial court reversibly erred in
 instructing the jury that "knowingly" was the
 culpable mental state for soliciting child
 prostitution.

[6] Ross I was not yet on the
 books when the district court rejected Randolph's
 tendered jury instruction.

[7] Recently, a different division of the
 court of appeals followed Randolph's lead with
 no analysis and held that knowingly, not intentionally, is
 the applicable culpable mental state of soliciting for child
 prostitution under subsection (1)(a). People v.
 Dominguez, 2024 COA 32, ¶ 10, 551 P.3d 1205, 1208,
 cert. granted in part, No. 24SC319, 2024 WL 5229031
(Dec. 23, 2024).

[8] The legislature has indicated that the
 culpable mental state of a particular offense may also be
 designated by the phrases "with intent to
 defraud" or "knowing it to be false."
§ 18-1-503(1) (emphases added). These are not additional
 culpable mental states. Rather, they merely require "a
 specific kind of intent" or a "specific
 kind of . . . knowledge." Id.
(emphases added). In other words, these phrases reflect the
 culpable mental states of intentionally and knowingly,
 respectively, in a more restrictive form. There is no support
 for Randolph's assertion that the legislature meant
 "for the purpose of" to be considered "a
 specific kind of intent." And without such support, we
 decline his invitation to embrace this
 interpretation.

[9] This is a slightly different tack from
 the one Randolph took before the division. There, he argued
 that "for the purpose of" refers to the culpable
 mental state of "intentionally," not that it
 constitutes its own culpable mental state.

[10] The definition Randolph plucks out
 of Colorado Ethics Watch imitates the definition of
 the culpable mental state of intentionally. See
§ 18-1-501(5) ("A person acts
 'intentionally' . . . when his conscious objective is
 to cause the specific result proscribed by the statute
 defining the offense.").

[11] It is not lost on us that our
 endorsement of the holding in Ross I (that "for
 the purpose of" means intentionally) or our acceptance
 of Randolph's position (that "for the purpose
 of" is a new culpable mental state resembling
 intentionally) would risk troublesome repercussions by
 potentially transforming "for the purpose of" in
 myriad criminal statutory provisions into either a fifth
 culpable mental state or the culpable mental state of
 intentionally.

[12] We stop short of categorically
 stating that the phrase "for the purpose of" in a
 statute can never be deemed either its own culpable mental
 state or the culpable mental state of intentionally. We find
 it wise to heed the "old saw . . . that lawyers and
 judges 'never say never.'" United States v.
 Flores, 985 F.2d 770, 783 n.27 (5th Cir. 1993). It is
 possible, we suppose, that the legislature could intend
 either of those extraordinary scenarios. See §
 18-1-503(1) (stating that a culpable mental state is
 "ordinarily designated" by using
 intentionally, knowingly, recklessly, or criminal negligence
 (emphasis added)). But see § 18-1-501(4)
(defining "[c]ulpable mental state" as
 intentionally, knowingly, recklessly, and criminal
 negligence, without the "ordinarily" qualifier that
 appears in section 18-1-503(1)). Of course, before a court
 may infer such an intent, there must be a basis to do so. It
 suffices here to declare that no such basis exists with
 respect to the phrase "for the purpose of" in
 subsections (1)(a) and (1)(b).

[13] Under the definition of
 intentionally, whether the result actually occurs is
 immaterial. See § 18-1-501(5). But for this
 culpable mental state to apply, a crime must be
 described in terms of a required result.
Id.

[14] That the legislature expressly
 designated the culpable mental state of knowingly in
 subsection (1)(c)-and only in subsection (1)(c)-does not
 compel the conclusion that it meant to apply a different
 culpable mental state in subsections (1)(a) and (1)(b).
Indeed, Randolph does not argue otherwise. The use of
 "knowing" in subsection (1)(c) as a qualifier for
 the "direction" to a place was necessary to clarify
 that what the prosecution must prove is that the offender
 knew the direction to the place was for the purpose
 of prostitution of or by a child. § 18-7-402(1)(c)
("Directs another to a place knowing such
 direction is for the purpose of prostitution of a child
 or by a child" (emphasis added)). Had the legislature
 not included "knowing such direction is" before
 "for the purpose of," it would have proscribed
 simply "[d]irect[ing] another to a place for the purpose
 of prostitution of a child or by a child," which could
 have been understood as requiring proof that the offender was
 aware that the place itself existed for the purpose
 of prostitution of or by a child. Regardless, for the reasons
 we have articulated, knowingly is the only culpable mental
 state that we can reasonably infer from subsections (1)(a)
 and (1)(b).

---------